UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

Leonard C.,[1]

                                    Plaintiff,

        v.                                              6-25-cv-00718
                                                        (MJK)


Commissioner of Social Security,

                                    Defendant.

---

Peter Zisser, Esq., for Plaintiff
Fergus Kaiser, Special Asst. U.S. Attorney, for Defendant

Mitchell J. Katz, U.S. Magistrate Judge


**MEMORANDUM-DECISION and ORDER**

Leonard C. commenced this action under Social Security Act, 42

U.S.C. § 405(g), seeking judicial review of a final decision of the

Commissioner of Social Security denying his application for benefits. This

matter was assigned to me, for all proceedings and entry of a final

judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General

Order No. 18 as Leonard C. consented to my jurisdiction (Dkt. 7), and the

Commissioner did not withdraw his consent. Both parties filed briefs, which

---

[1] In accordance with guidance from the Committee on Court Administration and
Case Management of the Judicial Conference of the United States, which was
adopted by the Northern District of New York in June 2018, to better protect
personal and medical information of non-governmental parties, this Memorandum-
Decision and Order will identify Leonard C. using only his first name and last
initial.

1

the court treats as motions under Federal Rule of Civil Procedure Rule 12(c), in accordance with General Order 18.

## I.  PROCEDURAL HISTORY

On January 31, 2023, Leonard C. filed applications for Disability Insurance Benefits ("DIB), and Supplemental Security Income ("SSI"), alleging disability beginning March 25, 2010. (Administrative Transcript ("T") 104, 298-309 (Dkt. 8). Both applications were initially denied on July 24, 2023, and upon reconsideration on September 26, 2023. (T. 71, 72, 87, 88). On July 24, 2024, Administrative Law Judge ("ALJ") Kenneth Theurer held a virtual hearing during which Leonard C. and vocational expert ("VE") Robert Baker testified. (T. 38-56). On July 29, 2024, the ALJ issued a decision denying Leonard C. benefits. (T. 22, 30). This became the Commissioner's final decision when the Appeals Council denied Leonard C.'s request for review on May 6, 2025. (T. 5-7).

## II.   GENERALLY APPLICABLE LAW

### A.    Disability Standards

To be considered disabled, a claimant seeking DIB or SSI benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or

can be expected to last for a continuous period of not less than twelve

months . . . ."  42 U.S.C. § 1382c(a)(3)(A). Additionally, the claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R.

sections 404.1520 (for DIB) and 416.920 (for SSI), to evaluate disability

claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); *see Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Berry*, 675 F.2d at 467). The claimant has the burden of establishing disability at the first four steps. *Id.* If the claimant establishes that his impairment prevents him from performing his past work, then the burden then shifts to the Commissioner to prove the fifth and final step. *Id.*

### B.   Scope of Review

This Court has jurisdiction under 42 U.S.C. § 1383(c)(3). "A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981) (cleaned up); *see Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). In reviewing a final decision of the Commissioner, a court must decide whether the ALJ applied the correct legal principles to reach their conclusion and whether "substantial evidence" supported the decision. *See* 42 U.S.C. § 405(g); *see also Berry*, 675 F.2d at 467. "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as

4

adequate to support a conclusion.'" *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quotation omitted).

Still, the "substantial evidence" standard is a "very deferential standard of review—even more so than the clearly erroneous standard." *Brault*, 683 F.3d at 448 (internal quotation marks omitted); *see Nasrallah v. Barr*, 590 U.S. 573 (2020) (noting that under the substantial evidence standard an agency's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary") (cleaned up). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). Nevertheless, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *See Id.*; *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.  FACTS

The record includes Leonard C.'s medical treatment records which the parties are familiar with. The Court will refer to the pertinent records and Leonard C.'s hearing testimony in its analysis as appropriate.

## IV.  THE ALJ'S DECISION

At step one of the sequential evaluation, the ALJ determined that Leonard C. had not engaged in substantial gainful activity since March 25, 2020. (T. 19). At step two, the ALJ found that Leonard C. had the following severe impairments: diabetes mellitus, diabetic neuropathy, diabetic retinopathy, hypertension, and ischemic heart disease. (*Id.*). At step three, the ALJ determined that Leonard C.'s impairments neither meet nor medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 20).

Next, the ALJ determined that Leonard C. had the residual functional capacity ("RFC") to perform "less than the full range of light work," with the following limitations:

> he can occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, sit for up to six hours, stand or walk for approximately four hours in an eight hour day with normal breaks; occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; can perform occasional balancing, stopping, kneeling, crouching, and crawling; should avoid work at

6

unprotected heights or in conjunction with dangerous machinery; and should not operate a motor vehicle.

(T. 20).

In making the RFC determination, the ALJ stated that he considered all Leonard C.'s symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" (T. 24). The ALJ added that he fully considered the "the medical opinion(s) and prior administrative medical finding(s)" as required by 20 C.F.R. §§ 404.1520c, 416.920c. (*Id.*).

At step four, the ALJ reasoned that Leonard C. is unable to perform any past relevant work. (T. 24). And at step five, using the Medical Vocational Guidelines as a "framework," and the VE's testimony, the ALJ found that Leonard C. was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (T. 25-26). The ALJ thus found that Leonard C. was not disabled. (T. 26).

## V.    ISSUES IN CONTENTION

Leonard C. essentially argues two points: first, that the ALJ's step five determination was unsupported by substantial evidence (Leonard C.'s Brief ("Pl.'s Br.") at 8-9 (Dkt. 9)); second, that the ALJ's RFC determination was not supported by substantial evidence because the ALJ ignored prior

administrative medical findings suggesting that Leonard C.'s RFC limited him to sedentary work. (Pl.'s Br. at 10-11); (Leonard C.'s Reply Brief ("Rep. Br.") at 8 (Dkt.12)).

The Commissioner responds that both the ALJ's step five determination, and the ALJ's RFC determination were supported by substantial evidence. (Defendant's Brief ("Def.'s Br.") at 5-12 (Dkt. 11)). For the following reasons, the Court agrees with the Commissioner that the ALJ's step five decision and RFC determinations were supported by substantial evidence. Therefore, the Court affirms the ALJ's decision.

## VI.   DISCUSSION

### 1.   Because there was no conflict between the VE's testimony and the dictionary of occupational titles, the ALJ's step five determination is supported by substantial evidence.

Leonard C. notes that the ALJ limited him to "light work," the full range of which "requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour day." (Pl. Br. at 9) (citing *Golden v. Saul,* 2020 WL 3248821, at 6, n.6 (W.D.N.Y. June 16, 2020) (citing SSR 83-10). Leonard C. argues that the VE's testimony was inconsistent with the Dictionary of Occupational Titles ("DOT") and the ALJ failed to resolve this conflict, resulting in a decision not supported by substantial evidence. (Pl.

Br. at 9). The Commissioner responds that the ALJ properly relied on the VE's testimony because there was no "apparent conflict" between the VE's testimony and the DOT, and thus the ALJ decision was supported by substantial evidence. (Def. Br. At 8).

At step five, the Commissioner bears the burden of proving that a significant number of jobs exist in the national economy that a claimant can perform. *See McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (citing 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v)). It is "standard practice" for the Commissioner to use VE testimony to satisfy his burden. *See Matta v. Astrue*, 2011 U.S. Dist. LEXIS 120673, at *9-10 (E.D.N.Y. Oct. 18, 2011) (cleaned up). As a general matter, occupational evidence offered by a VE should be consistent with that provided by the DOT. *See* SSR 00-4p, 2000 WL 1898704, at *2. If there is an apparent unresolved conflict between VE evidence and the DOT, the ALJ has an affirmative duty to elicit a reasonable explanation for the conflict before relying on the VE evidence to decide whether the claimant is disabled. *Id.* But an ALJ need not elicit additional testimony from the VE where there is "no apparent conflict." *Hernandez v. Comm'r of Soc. Sec.*, 2022 WL 18402121, at *10 (S.D.N.Y. Dec. 16, 2022) (footnote omitted); *see Patricia K. v. Comm'r of Soc. Sec.*, 2020 WL 7490323, at *17 (N.D.N.Y. Dec. 21, 2020) ("However, '[t]he DOT's mere

failure to mention every single characteristic of [a claimant's] limitations in every job available for [him] does not constitute [an apparent conflict].'") (cleaned up). And an ALJ's failure to do so can be harmless error when there is no conflict or the VE provides a basis for relying on his or her testimony instead of the DOT. *See Carvey v. Astrue*, 2009 WL 3199215, at *13 (N.D.N.Y. Sept. 30, 2009)

Here, there is no conflict between the VE's testimony and the DOT. To start, the ALJ did not conclude that Leonard C. could perform the full range of light work as Leonard C. argues. *See* (Pl. Br. at 8-10). Rather, he found that Leonard C. could perform "less than the full range of light work" (T. 24). In the hypothetical he posed, the ALJ asked the VE to assume an individual Leonard C.'s age, education, and vocational history who could, among other things, "occasionally lift and carry 20 pounds, frequently carry 10 pounds, sit for up to 6 hours, stand or walk for approximately 4 hours of an 8-hour day with normal breaks, . . . can perform occasional balancing, stooping, kneeling, crouching, and crawling . . . ." (T. 52-53). With these limits in mind, the VE offered "primarily office, clerical-type positions that'll allow for that four-hour stand/walk[,] [a]nd all the jobs at a desk and also standing, typically." (T. 53). The jobs the VE offered, and the ALJ adopted,

10

include marker (DOT No. 209.587-034), 1991 WL 671802 (1991); mail clerk (DOT No. 209.687-026), 1991 WL 671813 (1991); ticket seller (DOT No. 211.467-030), 1991 WL 671853 (1991). (T. 29, 53).

In his determination, the ALJ relied on the VE's testimony and found that "there are jobs that exist in significant numbers in the national economy that [Leonard C.] can perform." (T. 25). Alongside that finding, the ALJ noted "[Leonard C.]'s ability to perform all or substantially all of the requirements of [the full range of light work] has been impeded by additional limitations." (*Id.*). And "[t]o determine the extent to which these limitations erode the unskilled light occupational base, the [ALJ] asked the vocational expert whether jobs exist in the national economy for an individual with [Leonard C.]'s age, education, work experience, and [RFC]." (*Id.*). The ALJ added that, after considering the parameters of the ALJ's question, the VE testified that such an individual could perform work as a marker, mail clerk, or ticket seller. (*Id.*)

The ALJ correctly relied on the VE's testimony that Leonard C. could perform other work in the national economy. To begin, the ALJ complied with his affirmative duty to confirm that the VE's testimony was consistent with the DOT. SSR 00–4p ("When a [vocational expert] provides evidence

11

about the requirements of a job or occupation, the [ALJ] has an affirmative responsibility to ask about any possible conflict between that [vocational expert's] evidence and information provided in the DOT. In these situations, the [ALJ] will: Ask the [vocational expert] if the evidence he or she has provided conflicts with information provided in the DOT"). And when asked whether the jobs he offered were consistent with the DOT, the VE replied: "it is. DOT does not mention the use of automobiles, so that part of my answer is based on my experience and training[] and also separating out light jobs that would allow a four-hour stand/walk." (T. 49-51). Moreover, the VE specifically testified that he considered "clerical" jobs that would allow for "four-hour stand/walk" limitations. (T. 49). The VE plainly identified a subset of light duty jobs that Leonard C. could perform given the RFC.

Further, contrary to Leonard C.'s claims, there is no "obvious conflict" between the VE's testimony and the DOT regarding standing/walking requirements that would have required the ALJ to elicit additional testimony. Leonard C. argues that the full range of light work "requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour work day." (Pl. Br. at 9) (cleaned up). This is true. *See Poupore v.*

12

*Astrue*, 566 f.3d 303, 305 (2d Cir. 2009) (per curiam) ("The full range of light work requires intermittently standing or walking for a total of approximately 6 hours of an 8-hour workday, with sitting occurring intermittently during the remaining time"). But not all light work jobs require standing or walking for that amount of time. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (noting that a job may be classified as light "when it involves sitting most of the time with some pushing and pulling of arm or leg controls"). Indeed, as described in the DOT descriptions for the jobs the VE identified, a job can be classified as "light work" if "it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or [] when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible." *See* marker (DOT No. 209.587-034), 1991 WL 671802 (1991); mail clerk (DOT No. 209.687-026), 1991 WL 671813 (1991); ticket seller (DOT No. 211.467-030), 1991 WL 671853 (1991). And again, as the VE found a subset of light duty jobs that Leonard C. could perform given his RFC, there is no "obvious conflict" between the DOT and the VE's testimony, and thus the ALJ was under no duty to elicit additional testimony. *See Clark v. Colvin*, 2015 WL 1446937, at *10 (N.D.N.Y Mar. 23,

2015) *report and recommendation adopted*, 2015 WL 1446987 (citing *Peck v. Astrue*, 2010 WL 3125950, at \*10 (E.D.N.Y. Aug. 6, 2010) (holding that an ALJ is not required to ask a rote question where there is no indication of conflict with the DOT) (citation omitted); *see e.g.*, *Denning v. Saul*, 2019 WL 453023, at \*4 (W.D. Okla. Sept. 19, 2019) ("finding no conflict where VE testified that [a claimant] with 4-hour walking limitation could perform occupation categorized in DOT as "light work" because, '[b]y [the DOT's] definition, light work requires only a good deal of walking or standing"); *Saez v. Astrue*, 2012 WL 1155946, at \*4 (C.D. Cal. Apr. 6, 2012) (same)). Therefore, the ALJ's step five determination was supported by substantial evidence.

## 2. The ALJ's RFC Determination was supported by substantial evidence.

Leonard C. argues that the ALJ ignored medical evidence that would support limiting him Leonard C. to sedentary work and mandate that he be declared disabled per Rules 201.12 and 201.14 of the GRIDs. *See* (Pl. Br. at 6-7) (citing *DI* 25025.035). Specifically, Leonard C. cites prior administrative medical findings of state agency medical consultants Drs. Miller and Brauer, both of whom opined that Leonard C. was limited to performing sedentary work. (Pl. Br. at 6-7; Tr. 24, 56-57, 63-64, 71-72, 78-

79). To Leonard C., the ALJ finding the opinions "generally persuasive," but refusing to adopt a sedentary RFC determination as those opinions called for, leaves the ALJ's RFC determination unsupported by substantial evidence. (Pl. Br. at 6-7; Rep. Br. at 8).

The Commissioner responds that the ALJ fully adopted the opinions of Drs. Miller and Brauer and therefore the RFC was supported by substantial evidence. (Def. Br. at 10-11). For the reasons set forth below, the Court agrees with the Commissioner.

The RFC is "what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis[.]" *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (citation omitted)). It is an administrative decision, not a medical one. *See Breinin v. Colvin*, 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015).

A claimant's RFC is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p. At the hearing level, the ALJ is responsible for determining a

15

claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p; *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is the Commissioner's responsibility). Deciding a claimant's RFC is an issue reserved for the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner."). Additionally, it is the ALJ's job to resolve genuine conflicts in the evidence. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

In assessing a claimant's RFC, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (superseded in part by regulation). The ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. The ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in her decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta* 508 F. App'x at 56 (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971)) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and

16

synthesizes all evidence available to render an RFC consistent with the record as a whole); *see also Castle v. Colvin*, 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (holding that the fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand) (cleaned up). Further, the burden to provide a more restrictive RFC lies with Leonard C., not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a).

Here, Leonard C.'s argument stems from a misreading of the Social Security Regulations. For instance, 20 C.F.R. § 404.1527(e)(1) specifically states that an RFC finding in a medical opinion will be considered, but "the final responsibility for deciding th[is] issue[] is reserved to the Commissioner." Similarly, 20 C.F.R. § 404.1520b(c)(v) explains that statements like what a claimant's RFC "is using our programmatic terms about the functional exertional levels"—like sedentary or light—are expressly reserved for the Commissioner, and not a claimant's physician. Thus, the ALJ was free to not adopt the RFC opinions of Drs. Miller and Brauer that limited Leonard C. to sedentary work. That is precisely what the ALJ did here.

But even while ignoring the sedentary RFC designations suggested by Drs. Miller and Brauer, the ALJ still largely followed the functional limitations they offered in his RFC determination—indeed, the ALJ found both opinions "generally persuasive." *See* (T. 24, 56, 63). For example, the RFC limited Leonard C. to "occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, sit for up to six hours, stand or walk for approximately four hours in an eight hour day with normal breaks . . . ." (T. 204). Both Drs. Miller and Brauer opined that Leonard C. had exactly the same limitations. (T. 71-72, 79). Moreover, the ALJ's RFC provided even stricter postural limitations than both Drs. Miller and Bauer because the ALJ limited Leonard C. to occasional kneeling and crawling—while Drs. Miller and Bauer opined that Leonard C. could do both without any limit. (T. 20, 72, 79).

At bottom, Leonard C.'s argument amounts to an invitation for this Court to reweigh evidence in a manner more favorable to him—the Court declines because it is insufficient under the substantial evidence standard of review. *See Bonet ex rel. T.B. v. Colvin,* 523 F. App'x 58, 59 (2d Cir. 2013) ("whether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence

18

supports the ALJ's decision.*"); see also McIntyre*, 758 F.3d at 149 (explaining

that "[i]f evidence is susceptible to more than one rational interpretation,

the Commissioner's conclusion must be upheld.").

## VII. CONCLUSION

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that Leonard C.'s motion for judgment on the pleadings (Dkt. 9) be **DENIED**; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. 11) be **GRANTED**; and it is further

**ORDERED**, that the ALJ's decision be **AFFIRMED**.

Dated: March 4, 2026

_____
Hon. Mitchell J. Katz
U.S. Magistrate Judge